IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE PERO, individually and on behalf of all others similarly situated, | CIVIL ACTION NO.: 2:25-cv-01859 |
| *Plaintiff*, | CLASS ACTION |
| v. | **JURY TRIAL DEMANDED** |
| BROWN-DAUB CHEVROLET OF NAZARETH, | |
| *Defendant*. | |

**CLASS ACTION COMPLAINT**

Plaintiff Catherine Pero ("Plaintiff"), individually and on behalf of all persons similarly situated, files this Class Action Complaint ("Complaint") against Brown-Daub Chevrolet of Nazareth ("Brown" or "Defendant"), seeking all available remedies under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Defendant Brown for engaging in a systematic scheme of making unwanted communications through the use of an automated dialing system ("ATDS") with Plaintiff after she specifically notified them that she no longer wanted to be contacted.

2. Despite Plaintiff specifically opting out of further communications, Defendant, in violation of the TCPA, continued to send her text messages with the ATDS.

3. As a result of Defendant's illegal communications with Plaintiff, Defendant has violated federal law.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case arises from violations of the TCPA, 47 U.S.C. § 227, *et seq.*, a federal consumer protection law.

5. Personal jurisdiction exists over Defendant because Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Most, if not all, of the acts complained of herein occurred in this district, and Defendant maintains its principal place of business within this district.

## THE PARTIES

7. Plaintiff Catherine Pero is an individual who resides in Pipersville, Pennsylvania, and at all times mentioned herein, is a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant Brown-Daub Chevrolet of Nazareth is a company located at 819 Nazareth Pike, Pennsylvania. Defendant has sent unwanted communications via an ATDS to the cell phones of Plaintiff and members of the class.

9. The unlawful acts alleged in this Complaint were committed by Defendant and/or its officers, agents, employees, or representatives, including alter egos of one another, while actively engaged in the management of Defendant's businesses or affairs and with the authorization of Defendant.

**FACTUAL ALLEGATIONS**

10. During the course of 2024, Plaintiff was interested in purchasing a truck and considered doing business with Defendant. During this time, Plaintiff provided Defendant with her contact information, including her cell phone number, so that Defendant could send Plaintiff information about the dealership and particular vehicles for sale.

11. Upon information and belief, Plaintiff alleges that through the use of an ATDS, Defendant began to send Plaintiff frequent texts to her cell phone designed to help Defendant promote its business with the recipient of the text; in this instance, Plaintiff.

12. In October 2024, Plaintiff received a text to her cell phone stating that Defendant was "updating our records and see that you might be in the market to buy, sell, or trade a vehicle. Is that correct? Please reply Y for Yes and N for No Reply Stop to opt-out." Plaintiff decided to opt-out and replied "STOP." This should have ended the text solicitations from Defendant.

13. Defendant responded by sending Plaintiff a text to her cell phone confirming her election to opt-out of future communications. Specifically, the text stated, "You have been unsubscribed and will no longer receive messages from us." However, despite sending the confirmatory text, Defendant ignored Plaintiff's request to opt-out of the text messages and instead continued to send harassing text messages via its ATDS to Plaintiff's cell phone.

14. Defendant's telephonic communications to Plaintiff were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

15. On January 8, 2025, Plaintiff received a text to her cell phone from someone purporting to be "Richard at Brown-Daub Chevrolet."

16. On January 28, 2025, Plaintiff received another solicitation via text to her cell phone seeking to sell her a vehicle.

3

17.     On Tuesday, February 18, 2025, Plaintiff received a text to her cell phone from someone purporting to be "Katie from Brown-Daub Chevrolet!"

18.     On March 4, 2025, Plaintiff received another text to her cell phone from someone purporting to be "Katie from Brown-Daub Chevrolet!" Plaintiff received yet another sales solicitation text to her cell phone on or about Wednesday, March 12, 2025. Unlike other text messages from Defendant, this text was undated.

19.     Plaintiff has continued to receive unwanted texts from Defendant sent to her cell phone. On March 28, 2025, Plaintiff received a text touting the good deals available and encouraging her to come into the dealership.

20.     Plaintiff received an undated text on her cell phone on a Friday. The text claims, "It's Katie at Brown-Daub Chevrolet!" The final text, for now, received by Plaintiff on her cell phone, is also undated. This text claims, "This is Richard from Brown-Daub Chevrolet."

21.     Plaintiff is alerted and disturbed when she receives a text message on her cellular device. The unsolicited text messages that Defendant transmitted to Plaintiff's cellular device were an ongoing nuisance to Plaintiff, invaded Plaintiff's privacy, and distracted Plaintiff upon receipt.

22.     Defendant sent the aforementioned text messages to Plaintiff's cellular telephone using a telephone number that is owned or leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing campaign.

23.     Defendant sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text message to hundreds, perhaps more, of customers' cellular telephones during the class period.

24. The automated text messaging system used by Defendant to send the text message to Plaintiff has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

25. Upon information and belief, Defendant utilized an "automated telephone dialing system" because the text message sent to Plaintiff was sent from a telephone number utilized to send text messages to consumers without human intervention and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers automatically.

26. The text message at issue sent by Defendant constituted an "advertisement" and/or "telemarketing" as defined by the TCPA because Defendant sent the text message to Plaintiff to advertise its automobile sales and leasing and encourage Plaintiff to do business with Defendant.

27. Defendant's telephonic communications to Plaintiff were not made for "emergency" purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

28. Plaintiff received all of the texts sent by Defendant using an ATDS to her cell phone despite the fact that she had opted out of receiving the text solicitations and that opt-out had been specifically acknowledged by Defendant. These texts were a source of significant annoyance and harassment. Defendant knew or should have known that the transmission of these text messages from Defendant's ATDS to Plaintiff's cell phone was a violation of the TCPA.

29. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

30. Plaintiff was personally affected by Defendant's aforementioned conduct because Plaintiff was frustrated that Defendant annoyed Plaintiff with uninvited marketing text messages without Plaintiff's prior express consent.

31. The text messages from Defendant or its agent(s) violated the TCPA.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated.

33. Plaintiff is an individual who received unsolicited text messages from Defendant. Plaintiff brings this case as a class action pursuant to Federal Rules of Civil Procedure Rule 23 on behalf of a Class defined as follows:

> All persons within the United States who were sent an automated marketing text message by Defendant and/or its employees and/or agents to said person's cellular telephone following a visit to Defendant's dealership or call to Defendant, visit to Defendant's website, or other means of transferring contact information by said person within the four years prior to the filing of the Complaint (the "Class").

34. Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the Judge to whom this case is assigned and the Judge's staff.

35. Plaintiff reserves the right to redefine the Class and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

36. **Numerosity.** The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited text messages to hundreds, if not thousands, of customers' cellular telephones nationwide during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members

is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

37. **Commonality.** There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

    a) Whether within the four years prior to the filing of this Complaint, Defendant or employees or agents transmitted any marketing text messages without the prior express written consent or despite the explicit revocation of that consent to Plaintiff and Class members using an "automatic telephone dialing system";

    b) Whether Defendant can meet its burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send marketing text messages complained of, assuming such an affirmative defense is raised;

    c) Whether Defendant can meet its burden to show Defendant did not send the marketing text messages complained of to class members who had explicitly revoked consent to receive those messages, assuming such an affirmative defense is raised;

    d) Whether Defendant's conduct was knowing and/or willful;

    e) Whether Plaintiff and the members of the Class were damaged thereby, and the extent of damages for such violation; and,

    f) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

38. **Typicality.** Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

39. Plaintiff represents and is a Class member of the Class because Plaintiff received at least one marketing text message through the use of an ATDS without providing prior express written consent to Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of Class members, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

40. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

41. **Adequacy.** Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA, 47 U.S.C. §§ 227, *et seq*.

42. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

43. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

44. **Predominance.** Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

45. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

46. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

47. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

48. The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

49. Defendant has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole. Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

50. The Class may also be certified because:

    a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

    (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and,

    (c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

51. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### Violation of TCPA, 47 U.S.C. § 227, *et seq.*

52. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

53. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

54. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

55. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B).

56. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and all Class members are also entitled to, and do seek, an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

a) That this action be certified as a Class Action, establishing the Class and any appropriate sub-classes that the Court may deem appropriate;

b) Appointing Plaintiff as the representative of the Class;

c) Appointing Edelson Lechtzin LLP as Class Counsel;

d) An award of $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(B);

e) An award of $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendant, pursuant to 47 U.S.C. § 227(b)(3)(C);

f) An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);

g) Costs of suit;

h) An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine;

i) Pre-judgment and post-judgment interest; and

j) Any other further relief that the court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable

Dated: April 10, 2025                                  Respectfully submitted,

*/s/Eric Lechtzin*
Eric Lechtzin
(PA ID # 62096)
Andrew Lapat
(PA ID # 55673)
**EDELSON LECHTZIN LLP**
411 South State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com
alapat@edelson-law.com

*Attorneys for Plaintiff and the
Proposed Class*

13